DAVID MESERVE *vs.* LEWISTON STEAM MILL COMPANY.

*Application of the terms of a written contract to additional work.*

September 28, 1871, the parties to this suit entered into two written agreements; one for the furnishing by the plaintiff to the defendants of two million feet of logs, and the other for the driving of them by the plaintiff at a dollar a thousand. In the following November, the plaintiff further agreed in writing to furnish another million feet of logs, but no stipulation as to the driving was inserted. These last logs were also driven by the plaintiff. There was testimony that, before entering upon this work, there was considerable discussion as to the rate at which it should be done; the defendants claiming that Mr. Meserve offered to do it for seventy-five cents a thousand, and that they were willing to give him but half a dollar; which proposition (they said) he finally acceded to; while Mr. Meserve testified that he always demanded a dollar a thousand, and would take no less, but admitted that the defendants wanted him to drive at half that rate, presenting a writing to that effect for his signature, which he refused to sign. Upon this state of facts, the defendants contended that if, after this discussion, no price was definitely fixed for driving the additional million, the plaintiff would be entitled to recover only a fair, reasonable price for the driving; but the court instructed the jury that, in such event, the contract for driving of September 28, 1871, would determine the price: *held*, that this instruction was correct.

ON EXCEPTIONS.

ASSUMPSIT, to recover a balance due the plaintiff for logs furnished the defendant company, and for the driving of the same down the Androscoggin river during the spring of 1872. To sustain his claim, the plaintiff offered in evidence a contract for two million feet of logs, dated September 28, 1871, and another contract of that date for driving the logs; also an additional contract for one million feet more of logs, dated the following November. The plaintiff claimed that by the driving contract made September 28, 1871, he was to receive one dollar a thousand for all the logs put into the river for the Steam Mill Company that spring, during the driving season, regardless entirely of the lumber contract of the same date; while the defendants contended that, by a fair construction of that contract, the dollar a thousand only pertained to the logs named in the contract for furnishing, made the same day. The

plaintiff and defendants both testified that at the time of the execution of this contract, (September 28, 1871) there was no intention of putting in any more logs than those named in the log contract. The presiding judge ruled that the driving contract would control and determine the price of driving all the logs put into the Androscoggin river by the defendant company above Rumford Falls, during the driving season of that spring. There was evidence tending to show that in November, when the second furnishing contract was made, the price to be paid for driving the additional million was discussed by the parties. The plaintiff admitted that it was, but denied that any contract was finally entered into ; the agent of the defendant company and the clerk both testified that the plaintiff asked seventy-five cents a thousand and no more ; that the agent told him that he would not give more than fifty cents, and the agent testified that fifty cents was finally the agreed price. The presiding judge instructed the jury that it was competent for the parties to make a new contract. If they found such to be the fact, then the new contract should control the price. If they did not, from the evidence, notwithstanding the discussion, find that a new and different contract had been entered into between these parties, then they would be bound by that of September 28, 1871. The defendants contended that if from this discussion of price for the driving of the additional million, no price was definitely fixed, then the plaintiff would be entitled to recover a fair, reasonable price for the services rendered in driving ; but the court instructed the jury that in such event the contract of September 28, 1871, would determine the price.

The verdict was for the plaintiff in the sum of nineteen hundred and thirty-seven dollars and seven cents. To these rulings and instructions of the presiding judge, the counsel for the defendant company excepted.

There was also a motion for a new trial, upon the ground that the verdict was against law and evidence, and because the damages were excessive. This motion was supported in argument by a scrutiny of the items of the plaintiff's account annexed and a

computation to show the alleged errors, as appears by the opinion ; but as no question of law is involved or decided, a full statement of the testimony is deemed unnecessary.

*Frye, Cotton & White* for the defendants.

*D. Hammons* and *Pulsifer & Bolster* for the plaintiff.

VIRGIN, J.   We do not perceive any error in the ruling of the presiding justice.   The furnishing contract of September 28, was expressly modified by the parties not only in relation to the persons who might furnish, but also as to the quantity of logs ; and judging from the language used the new stipulations seem to have been indorsed upon the original.   Not so with the contract for driving.   At any rate there is no pretence that any new written contract was ever executed by the parties ; and the jury must have found that, although the subject matter was more or less discussed, still no agreement was made.   There being no other, the original stipulation for the driving of "all the logs put into the Androscoggin river," &c., must govern the parties.

The jury evidently scrutinized the plaintiff's account ; for instead of finding $3,480.43 due as stated in the account annexed to the writ, they returned a verdict for $1,937.07.   This amount must include the balance which they found to be actually due with interest thereon from the date of the writ—about thirteen months.

The defendants challenged but few of the items in the account. Sixty-two dollars are charged for tools turned over and for repairing boats.   Coombs as referee fixed the sum at $12.   The plaintiff charged for driving 3,149,800 feet when by his own testimony the scale bills show 3,036,000 feet and 100,000 turned in at Sunday river.   On the credit side the plaintiff had not entered his accommodation note of $1,500 paid by the defendants, nor the $30 for the use of the boats, as found by Coombs.   Making these deductions, the balance would be $1,887.43, without interest.

The defendants lay the most stress upon the quantity of logs left on Rumford Falls.   The testimony is very conflicting—vary-

Androscoggin W. P. Co. *v.* Bethel S. M. Co.

ing from 60,000 estimated by Mr. Knapp, who is a disinterested witness and has resided at Rumford Falls for many years, to 2 to 3,000,000 as estimated by Mr. Wood agent of the defendants. All agree that whatever the quantity of logs found on the falls, but a small portion of them belonged to the defendants. If the jury believed the testimony of the plaintiff and his witnesses, the verdict is not at most $100 too large; and that sum the plaintiffs have offered to remit.

The drive, by the contract, and in fact, was under the control of the defendants. The jury have virtually found the logs were well and seasonably driven, and we do not consider it our duty to disturb the verdict provided the plaintiffs remit $100.

*Motion and exceptions overruled.*

APPLETON, C. J., WALTON, DICKERSON, BARROWS and PETERS, JJ., concurred.